UNITED STATES v. DELAWARE, L. & W. R. CO.

(Circuit Court, S. D. New York. February 14, 1907.)

1. CARRIERS—INTERSTATE COMMERCE—REBATES.

A shipment from New York City to Buffalo, by way of New Jersey and Pennsylvania, is interstate commerce, and so is subject to the provisions of the Elkins law (Act Feb. 19, 1903, c. 708, 32 Stat. 847 [U. S. Comp. St. Supp. 1905, p. 599]), as to rebates; the interstate commerce act (Act Feb. 4, 1887, c. 104, § 1, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]), though providing that the provisions of the act shall apply to any carrier engaged in the transportation of passengers or property from one state to any other state, having a proviso that the provisions of this act shall not apply to the transportation of property "wholly" within one state.

2. SAME—INDICTMENT FOR GIVING REBATES.

An indictment against a carrier, alleging that P. was the duly authorized agent of the S. Company and vested by it with the sole and exclusive power and authority to determine over which line any shipment by it should be made; that defendant entered into an unlawful agreement with P. whereby it was agreed that P., as such agent, should cause S. to make large shipments over defendant's road, and S. should pay defendant the lawful rate for such shipments, and thereafter P. should present claims to defendant for a rebate on such shipments, under the guise of claims for services; and that such scheme was carried out, and defendant made payments to P. by way of rebate—charges a payment of rebates in viola-

tion of the Elkins law (Act Feb. 19, 1903, c. 708, 32 Stat. 847 [U. S. Comp. St. Supp. 1905, p. 599]); the fact that the rebate is paid to another than the shipper being immaterial, though a payment which is but a commission for obtaining business for the carrier is not within the statute.

3. INDICTMENT AND INFORMATION—DUPLICITY.

An indictment under the Elkins law (Act Feb. 19, 1903, c. 708, 32 Stat. 847 [U. S. Comp. St. Supp. 1905, p. 599]), declaring it unlawful for a carrier to offer, grant, or give a rebate, alleging that defendant offered, granted, and gave a rebate, is not duplicitous, but charges but one offense.

4. CARRIERS—ACT AS TO REBATES—EFFECT OF REPEAL OF PRIOR STATUTES.

The provision of the Hepburn law (Act June 29, 1906, c. 3591, § 10, 34 Stat. 584), repealing laws in conflict with the act, that "the amendments herein provided for shall not affect causes now pending * * * but such causes shall be prosecuted to a conclusion in the manner heretofore provided by law," in view of Rev. St. § 13 [U. S. Comp. St. 1901, p. 6], providing that "the repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture or liability incurred under such statute, unless the repealing act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture or liability," applies to rebate offenses committed before, but prosecution for which was commenced after, the passage of such act; so that an indictment in such a case alleging that a carrier "unlawfully and willfully" gave rebates, which would be enough under the Elkins law (Act Feb. 19, 1903, c. 708, 32 Stat. 847 [U. S. Comp. St. Supp. 1905, p. 599]), is sufficient, though under the Hepburn law it would be necessary to allege that they were given "knowingly."

Henry L. Stimson, U. S. Dist. Atty. (Henry A. Wise, John W. H. Crim, and Francis W. Bird, of counsel).

John B. Stanchfield (Charles A. Collin, of counsel), for defendant.

HOLT, District Judge. This is a demurrer to an indictment charging the defendant with the offense of paying rebates, in violation of the interstate commerce act and the acts amending it, particularly the act of 1903 commonly called the "Elkins Act." The indictment contains ten counts. The first and second counts charge payments of rebates by the defendant in October, 1903; the third and fourth counts, in May, 1904; the fifth and sixth counts, in September, 1904; the seventh and eighth counts, in January, 1905; and the ninth and tenth counts, in February, 1905. The odd-numbered counts charge the payment of rebates on shipments of merchandise from New York to Buffalo; the even-numbered counts charge such payments on shipments from New York to points beyond Buffalo.

Various grounds of demurrer are relied on. In the first place, the odd-numbered counts are demurred to on the ground that a shipment from New York to Buffalo is not interstate commerce, and that a payment of a rebate on such a shipment is not prohibited by the interstate commerce act. Goods shipped from New York to Buffalo over the defendant's road are transported from New York City to and through New Jersey to Pennsylvania, thence through Pennsylvania to the state of New York again, and thence by rail to Buffalo. In other words, the goods are transported from a point in the state of New York, through two other states, to another point in the state of New York. The defendant claims that such transportation is not interstate commerce, and that Congress cannot constitutionally pass

an act imposing a criminal punishment for giving rebates upon such a shipment. It is also claimed that, even if such transportation is interstate commerce, the interstate commerce act does not in fact apply to such a case. But I think that the authorities, although not entirely consistent, support the claim of the government that such transportation is interstate commerce, and that it is covered by the first section of the interstate commerce act. Hanley v. Kansas, etc., Ry. Co., 187 U. S. 617, 23 Sup. Ct. 214, 47 L. Ed. 333; Lord v. Steamship Co., 102 U. S. 541, 26 L. Ed. 224; Pacific Coast S. S. Co. v. Railroad Commissioners (C. C.) 9 Sawy. 253, 18 Fed. 10. The case of Lehigh Valley R. R. Co. v. Pennsylvania, 145 U. S. 192, 12 Sup. Ct. 806, 36 L. Ed. 672, upon the authority of which the case of U. S. ex rel. Kellogg v. Lehigh Valley R. R. Co. (D. C.) 115 Fed. 373, and similar cases have been decided, was a case of a tax imposed by a state upon receipts in the proportion of the amount of transportation within the state. The Supreme Court, in the case of Hanley v. Kansas City Southern Ry. Co., supra, distinguishes it upon this ground, and holds that those cases which, out of deference to the case of Lehigh Valley R. R. Co. v. Pennsylvania, have held that transportation of merchandise from one point in a state, through other states, to another point in the same state, was not interstate commerce, carried its conclusions too far. Moreover, aside from the authorities, it seems to me that, upon principle, the view that the transportation of merchandise over such a route constitutes interstate commerce is correct. The defendant's road passes through New Jersey, Pennsylvania, and New York. Neither of those states alone could regulate the transportation of merchandise over any part of the line except that which was situated within that state. Transportation upon such a road, therefore, cannot be efficiently regulated at all unless it is regulated by the United States. It is true that if the United States government has authority to regulate the transportation of merchandise between New York and Buffalo on the Lackawanna, the Erie, and the Lehigh Valley roads, and not upon the New York Central, there is a possibility that the New York Central road might obtain undue advantages in competition with the other three roads mentioned. On the other hand, if the government has not the power to regulate such transportation on the three roads first mentioned, and the state of New York should regulate transportation on the New York Central, between points in the state of New York, it would be possible for the three roads mentioned to obtain undue advantage over the Central to a still greater extent. There is a possibility of some discrimination under any theory, but I think that the simplest theory is that as soon as merchandise is carried from one state to another it becomes interstate commerce.

I do not think that too much weight should be given to a critical examination of the precise language of certain clauses in the first section of the interstate commerce act (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]). That section does provide that the provisions of the act shall apply to any common carrier engaged in the transportation of passengers or property from one state to any other state. This is the only language in the act applicable to transportation from one state to another, and undoubtedly the natural mean-

ing of this language would not include such a case of transportation of merchandise from New York to Buffalo. At the same time it is a perfectly correct statement to say that goods shipped from New York to Buffalo on the Lackawanna road are transported from one state to another. The act contains a clause applying to transportation from any place in the United States through a foreign country to any other place in the United States. It is argued that, if the act was meant to apply to transportation from any place in a state, through another state, to any other place in the same state, there would have been such a clause inserted as was inserted in the case of transportation through a foreign country. But I think that the proviso at the end of the section removes any doubt in the matter. That proviso declares that "the provisions of this act shall not apply to the transportation of property, or to the receiving, storage, delivery or handling of property wholly within one state. * * *" The word "wholly," as there used, imports, in my opinion, that such provisions shall apply to any transportation of property which is not wholly within one state.

Another ground of demurrer to the indictment is in substance that none of the counts allege facts constituting a crime, because they allege that the rebates were paid, not to the American Sugar Refining Companies, the shippers of the sugar, but to Lowell M. Palmer. Each count of the indictment alleges that Lowell M. Palmer was the duly authorized agent of the said sugar refining companies, and was vested by them with the sole and exclusive power and authority to determine over which of the lines of common carriers running west from New York any shipments of sugar of said sugar refining companies should be made; that the Lackawanna Railroad Company entered into an unlawful agreement with the said Palmer, whereby it was agreed that the said Palmer, as agent as aforesaid, should cause the said sugar refining companies to ship over the defendant's road large amounts of sugar; that the sugar refining companies should pay to the defendant the lawful rates for such shipments; that thereafter the said Palmer should present claims to the Lackawanna Railroad Company for a rebate upon such shipments, such claims to be in the guise of claims for extra lighterage; that thereupon said claims should be paid by the said Lackawanna Railroad Company, and that they should thereby give a rebate to the said Palmer of one cent for every hundred pounds of sugar shipped. It is then alleged that certain sugars were shipped from time to time, the transportation of which was paid for at the full tariff rates to the Lackawanna Railroad Company; that thereafter claims for rebate in the guise of claims for extra lighterage were presented by the said Palmer to the railroad company, and that thereafter the said railroad company paid to the said Palmer by way of rebate certain sums. The indictment further alleges that the said claims for extra lighterage and the payment thereof as aforesaid was a mere device agreed upon by the parties thereto to conceal the payment of such rebates, and that no services of lighterage or extra lighterage were at any times performed by the said Lowell M. Palmer or the said sugar refining companies in respect to the transportation of said sugars. The defendant's counsel argues that these allegations are consistent with the existence of a simple arrangement by which

the railroad company paid Palmer a commission for obtaining the business. But I do not think so. This indictment is substantially based upon the Elkins act. That act was intended, among other things, to cover the cases where the rebates are not paid directly to the shipper. It provides in substance that it shall be unlawful for any carrier to give any rebate in respect of the transportation of any property in interstate commerce whereby any such property shall be transported at a less rate than that named in the tariff filed by the carrier. The test by this statute is whether the carrier has transported the property at a less rate than that named in the tariff. In determining this question no legitimate expense of doing the business by the carrier should be deducted. The carrier has a right to employ persons to solicit business, just as it has a right to employ clerks and employés of all kinds to do the business, and any payments for such a purpose, cannot constitute a rebate, concession, or discrimination within the meaning of the act; but the mere fact that a rebate is not paid to the shipper, but is paid to somebody else, is quite immaterial under the Elkins act. If it is in fact a rebate, concession, or discrimination whereby the property is transported at a less rate than that named in the tariff, the unlawful act is committed. If upon the trial of this case it should appear from all the evidence that the payments charged were nothing but a payment to Palmer as a commission for obtaining business for the railroad, they would not be rebates within the meaning of the act. But the indictment alleges that they were. The allegations are that it was agreed that claims for rebates should be put in under the guise of a charge for extra lighterage, that no services for lighterage or extra lighterage were ever rendered, and that the amounts paid were in fact rebates. Moreover, upon the facts alleged, Palmer occupied such a relation to the sugar companies that it is impossible to regard him as an agent of the railroad company. He is alleged to be a duly authorized agent of the sugar companies, vested by them with the sole and exclusive power and authority to determine over which lines of common carriers any shipments of the sugar of said sugar refining companies should be made, and that it was agreed between the railroad company and Palmer that the said Palmer, as agent as aforesaid, should cause much larger amounts of shipments to be made over the defendant's line than had theretofore been made under the said arrangement for the payment of rebates.

Another ground of demurrer is the claim that each count of the indictment is void for duplicity. This objection is based on the fact that the Elkins act provided that it is unlawful for any corporation to offer, grant, or give a rebate, and that each count of the indictment alleges that the railroad company offered, granted, and gave a rebate. It is argued that as under the statute offering to give a rebate is a crime, and the actual giving of a rebate is a crime, two crimes are charged in each count of the indictment. But the general rule is well settled that in a criminal pleading, where a statute makes either of two or more distinct acts connected with the same general offense and subject to the same measure and kind of punishment indictable separately and as distinct crimes when committed by different persons or

152 F.—18

at different times, they may, when committed by the same person at the same time, be coupled in one count as constituting one offense. U. S. v. Fero (D. C.) 18 Fed. 901, 903; Crain v. U. S., 162 U. S. 625, 16 Sup. Ct. 952, 40 L. Ed. 1097. In a criminal pleading, if a statute makes each one of various acts criminal, and the indictment sets forth said acts coupled with the conjunctive "and" instead of the disjunctive "or," if such acts are shown to be merely different stages of the same transaction, the indictment is good. U. S. v. Janes (D. C.) 74 Fed. 545; Lehman v. U. S., 127 Fed. 41, 45, 61 C. C. A. 577; U. S. v. Nunnemacher, 7 Biss. 133, Fed. Cas. No. 15,903.

Another ground of demurrer to this indictment is that none of the counts alleged that the defendant knowingly gave any rebates. The allegations are in substance that the defendant unlawfully and willfully gave the rebates. The indictment admittedly would be sufficient in this respect under the Elkins act, but it is claimed that the so-called "Hepburn Act," passed in 1906, made it necessary in this case to allege that the defendant knowingly gave the rebates. All the acts alleged in this indictment, the making of the alleged agreement for a rebate, the transportation of the property, the payment of the tariff price, the presentment of claims for rebates, and the payment of the rebates, took place while the Elkins law was in effect. The indictment, however, was found in August, 1906, after the passage of the Hepburn bill. The Hepburn bill re-enacted the first section of the Elkins act (Act Feb. 19, 1903, c. 708, 32 Stat. 847 [U. S. Comp. St. Supp. 1905, p. 599]) down to the end of its statement of what was unlawful. The following sentence in the original act made such acts a misdemeanor, and this sentence in the Hepburn act was amended by inserting the words which are underlined as follows:

"Every person or corporation, *whether carrier or shipper*, who shall, *knowingly*, offer, grant, or give, or solicit, accept, or receive any such rebates, concession or discrimination, shall be deemed guilty of a misdemeanor."

The Hepburn bill (Act June 29, 1906, c. 3591, 34 Stat. 584) contained a saving clause as follows:

"Sec. 10. That all laws and parts of laws in conflict with the provisions of this act are hereby repealed, but the amendments herein provided for shall not affect causes now pending in courts of the United States, but such causes shall be prosecuted to a conclusion in the manner heretofore provided by law."

The defendant's counsel argues that as by section 10 all laws in conflict with the provisions of the Hepburn act are repealed by it, and as the amendments provided for in that act shall not affect causes "now pending" in the courts of the United States, therefore no prosecutions could be brought under the Elkins act after the Hepburn act was passed, that the saving clause only saved cases then pending, and that in any subsequent prosecutions the indictment must allege that the defendants did the acts alleged to be criminal knowingly. The thirteenth section of the United States Revised Statutes [U. S. Comp. St. 1901, p. 6] reads as follows:

"Sec. 13. Repeals not to affect liabilities unless, etc.

"The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the

repealing act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture or liability."

This section changes the rule of the common law by providing that the repeal of any statute shall not have the effect to release or extinguish any liability incurred under such statute unless the repealing act shall so expressly provide. It is claimed that this provision is not applicable to this case, because the Hepburn act has a specific saving clause of its own, and, as by the tenth section of the Hepburn act causes now pending only are explicitly saved, it follows that that clause takes the place of the general provisions concerning repeal in section 13 of the United States Revised Statutes. The question whether it does or does not must be admitted to be a nice one, but in my opinion section 13 of the United States Revised Statutes applies. Its provisions are general, applying to all subsequent legislation of Congress. It provides that the repeal of any statute shall not extinguish any liability incurred under it unless the repealing act shall so expressly provide. Section 10 of the Hepburn act does not expressly provide that the repeal of the Elkins act shall release or extinguish criminal liability incurred under said statute, and therefore, in my opinion, section 13 of the Revised Statutes applies. This view has been reached by Judge Landis of Chicago in the case of U. S. v. Standard Oil Company (D. C.) 148 Fed. 719, decided January 3, 1907, and by Judge Morris in the case of United States v. Chicago, etc., Railway Company and others (D. C.) 151 Fed. 84, in an opinion handed down late in January, 1907. In this case Judge Lochren, who is stated in a memorandum at the end of the opinion to have sat with Judge Morris at the hearing of these demurrers, but to have taken no part in this decision, expresses a contrary view. In both of these decisions much reliance is placed upon the case of Lang v. U. S., 133 Fed. 201, 66 C. C. A. 255. This case arose under a different statute, but presented, it seems to me, the same identical question. In that case Judge Barker held that section 13 of the United States Revised Statutes applied notwithstanding a similar saving clause. Judge Grosscup concurred in his decision upon a different ground, while Judge Jenkins dissented. The questions involved are very elaborately argued in these opinions, and I shall simply say that, with great respect for the distinguished judges who differ from them, I concur with the views of Judges Landis, Morris, and Barker. I cannot believe that it was the intention of Congress that parties who had committed offenses under the Elkins act should be discharged from all liability because indictments had not been filed at the time the Hepburn act was passed, while others, no more morally guilty, should be continued to be prosecuted under indictments found before that act was passed. I think that if that was the intention of Congress it would have said so. Section 13 of the United States Revised Statutes provides that the repeal of any statute shall not release any penalty or liability incurred under it unless the repealing act shall expressly so provide. The repealing act in this case did not so expressly provide. The best argument that can be made in support of the repeal is that it impliedly so provided. But in my opinion, since

section 13 was adopted there can be no repeal by implication in such a case.

My conclusion is that the demurrer should be overruled.