**FORDHAM BUS CORPORATION v. UNITED STATES et al.**

District Court, S. D. New York.

Oct. 23, 1941.

713

Charles E. Cotterill, of New York City, for plaintiff.

Smith R. Brittingham, Jr., Sp. Asst. to Atty. Gen., for the United States.

Daniel W. Knowlton, Chief Counsel, Interstate Commerce Commission, and E. M. Reidy, Asst. Chief Counsel, Interstate Commerce Commission, both of Washington, D. C., for the Interstate Commerce Commission.

Before FRANK, Circuit Judge, and HULBERT and CONGER, District Judges.

FRANK, Circuit Judge.

This is an action to set aside an order of Division 5 of the Interstate Commerce Commission, dated April 18, 1940, affirmed by the entire Commission on June 26, 1941, in Docket No. MC–74634, Fordham Bus Corporation, Common Carrier Application. The order under review granted plaintiff a certificate of public convenience and necessity authorizing it to operate as an interstate common carrier by motor vehicle of passengers and their baggage in round-trip charter operations over irregular routes from New York, New York, to all points in New York, New Jersey, Pennsylvania, Connecticut, Massachusetts, Maine, Maryland and the District of Columbia. Pursuant to 28 U.S.C.A. § 47, the case was heard by a three-judge court.

Plaintiff filed an application with the Commission under the so-called "grandfather" clauses of the Motor Carrier Act, 49 U.S.C.A. §§ 301, 306(a), 309(a), asking for the issuance of a common carrier certificate of public convenience and necessity, or in the alternative for a permit as a contract carrier.[1] Hearings were conducted and on March 12, 1940, the examiner served a recommended report and order finding applicant entitled to a certificate as a common carrier by motor vehicle covering the operations described above. Neither plaintiff nor any other party filed exceptions to the examiner's recommended report, and, after minor extensions of its effective date, the recommended report and order, as provided by statute, 49 U.S.C.A. § 305(a), became the April 18, 1940, order of Division 5 of the Commission. Pursuant to adjournment of this case for that purpose, plaintiff filed a petition for reconsideration before the entire Commission on June 14, 1941. In a written report the Commission denied plaintiff's petition on June 26, 1941.

█ The Commission's findings as to plaintiff's "grandfather" operations were as follows: "Applicant has engaged in operating passenger busses for hire since 1926, when the corporation was formed. At the time of the hearing, it owned and operated 22 busses, ranging in capacity from 20 to 37 passengers. Since prior to June 1, 1935, applicant has solicited special or charter parties at New York City for trips to points of interest in nearby States. Applicant's president testified that such transportation was performed only as the result of special arrangements with groups for a particular trip or tour, and return. The equipment was chartered by a representative of the group for the trip, who paid for the bus or busses chartered. There was no sale of in-

---

[1] Section 206(a) of the Motor Carrier Act, 49 U.S.C.A. § 306(a), so far as material here, provides: "Except as otherwise provided in this section and in section 210a [310a], no common carrier by motor vehicle subject to the provisions of this chapter shall engage in any interstate or foreign operation on any public highway, or within any reservation under the exclusive jurisdiction of the United States, unless there is in force with respect to such carrier a certificate of public convenience and necessity issued by the Commission authorizing such operations: Provided, however, That, subject to section 210 [310], if any such carrier or predecessor in interest was in bona fide operation as a common carrier by motor vehicle on June 1, 1935, over the route or routes or within the territory for which application is made and has so operated since that time, * * * except in either instance as to interruptions of service over which the applicant or its predecessor in interest had no control, the Commission shall issue such certificate without requiring further proof that public convenience and necessity will be served by such operation, * * *."

Section 209(a) of the Motor Carrier Act, 49 U.S.C.A. § 309(a), so far as ma-

terial here, provides: "Except as otherwise provided in this section and in section 210a [310a], no person shall engage in the business of a contract carrier by motor vehicle in interstate or foreign commerce on any public highway or within any reservation under the exclusive jurisdiction of the United States unless there is in force with respect to such carrier a permit issued by the Commission, authorizing such person to engage in such business: Provided, That, subject to section 210 [310], if any such carrier or a predecessor in interest was in bona fide operation as a contract carrier by motor vehicle on July 1, 1935, over the route or routes or within the territory for which application is made and has so operated since that time, or, if engaged in furnishing seasonal service, only, was in bona fide operation on July 1, 1935, during the season ordinarily covered by its operations, except in either instance as to interruptions of service over which the applicant or its predecessor in interest had no control, the Commission shall issue such permit, without further proceedings, if application for such permit was made to the Commission as provided in paragraph (b) of this section * * *."

dividual tickets for such trips. All the charter parties transported originated in New York City and the passengers were carried back to that point. No pick-ups were made en route and only the party or group and their personal baggage were carried." Plaintiff does not contend that the Commission's findings lack evidentiary support; nor has plaintiff placed before the Court the record upon which those findings were made. Thus the Court is relieved of the burden of reviewing the evidence and may decide this case on the face of the Commission's reports. Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 54 S.Ct. 692, 78 L.Ed. 1260.

The ultimate question for decision is whether the Commission erred in holding that plaintiff is a common carrier, it being plaintiff's contention that the facts disclose an operation which, as a matter of law, constitutes contract carriage.

■ Plaintiff asserts that a statute should not be so construed as to make it, or tend to make it, unconstitutional. With that we agree. Plaintiff asserts that we must, if possible, so construe the statute before us here as not to bring it within the statutory definition of a common carrier, for, in that event, the statute would be invalid, since, plaintiff argues, it is, by the nature of its operations, within the established category of private carriers and not within the established category of common carriers, i. e., those affected with a public interest. A private carrier cannot, says the plaintiff, be converted, by legislative fiat, into a common carrier and thereby be subjected to regulations which are valid solely with respect thereto. In support of its contention, plaintiff cites such cases as Michigan Public Utilities Commission v. Duke, 266 U.S. 570, 45 S.Ct. 191, 69 L.Ed. 445, 36 A.L.R. 1105, and Frost Trucking Co. v. Railroad Commission, 271 U.S. 583, 46 S.Ct. 605, 70 L.Ed. 1101, 47 A.L.R. 457; cf. Smith v. Cahoon, 283 U.S. 553, 51 S.Ct. 582, 75 L.Ed. 1264. But the basic postulate of those decisions was destroyed by the later decision in Nebbia v. New York, 291 U.S. 502, 536, 537, 54 S.Ct. 505, 506, 78 L.Ed. 940, 89 A.L.R. 1469, which held that "there is no closed class or category of * * * businesses affected with a public interest." The court there said: "And it is equally clear that if the legislative policy be to curb unrestrained and harmful competition by measures which are not arbitrary or discriminatory it does not lie with the courts

to determine that the rule is unwise." See also Olsen v. Nebraska, 313 U.S. 236, 61 S. Ct. 862, 85 L.Ed. 1305, 133 A.L.R. 1500. It is significant that the earlier cases cited by plaintiff were also cited in the dissenting opinion in the Nebbia case to show that the majority opinion was inconsistent with the prior precedents; see 291 U.S. at 555, 54 S.Ct. at 523, 78 L.Ed. 940, 89 A.L.R. 1469. That the earlier doctrine of "affectation with a public interest" was historically unfounded, see Adler, Business Jurisprudence, 28 Harv.L.Rev.(1914) 135; cf. Hamilton, Affectation with Public Interest, 39 Yale L. J.(1929) 1089.

■ Even in those earlier cases, it was acknowledged that private carriers might be regulated in ways appropriate to their character. It is not entirely clear whether the type of regulation, which was there deemed to be forbidden, was solely an attempt to require the vehicles to serve the entire public equally, or also included rate supervision. We need not decide that question here. Stephenson v. Binford, 287 U. S. 251, 53 S.Ct. 181, 77 L.Ed. 288, 87 A.L.R. 721, upheld regulation of the rates of private carriers as an exercise of the state's power to conserve the highways, leaving open the questions of (a) whether use of the public highways impressed the trucking business with a public interest and (b) whether regulation of private carriers was valid as a means of preventing impairment of the public service of common carriers. We think those questions were answered in the affirmative by the subsequent Nebbia case, supra. Plaintiff's operations will apparently be regulated in the same manner as the charter operations of any common carrier which admittedly comes within Section 203(a) (14); and the regulation of both, so far as appears, comes well within the doctrine of the Nebbia case. A different problem would arise if the statute necessarily required—or if the Commission were requesting—that plaintiff establish joint through routes or undertake to serve all comers in respect of its charter operations. Its solution would depend, however, not on any magic in plaintiff's denomination of itself as a "contract carrier," but on the more prosaic issue of whether petitioner could constitutionally be required to alter so radically its type of operations. As to that, we pass no judgment, since the question has not been presented. Cf. Heald v. District of Columbia, 259 U.S. 114, 123, 42 S.Ct. 434, 66 L.Ed. 852; Tyler v. Judges, 179 U.S.

405, 21 S.Ct. 206, 45 L.Ed. 252; Ashwander v. T.V.A., 297 U.S. 288, 324, and 346, 347, 56 S.Ct. 466, 80 L.Ed. 688; Coleman v. Miller, 307 U.S. 433, 460-467, 59 S. Ct. 972, 83 L.Ed. 1385, 122 A.L.R. 695.

Plaintiff has not suggested, and the court has sought in vain to find, any threatened or likely action by the Commission, or duty laid upon plaintiff by the Act, which will impose upon it a burden beyond the power of Congress to impose. It appears only that plaintiff will be required to charge reasonable rates, to file its charges, to maintain safe standards, etc. The Nebbia case removes any doubt we might have as to the validity of such regulation, if indeed we could have any doubt after the Shreveport case, Houston, E. & W. Texas Ry. v. United States, 234 U.S. 342, 355, 34 S.Ct. 833, 838, 58 L.Ed. 1341, which boldly upheld the "control [of Congress] over the interstate carrier in all matters having such a close and substantial relation to interstate commerce that it is necessary or appropriate to exercise the control for the effective government of that commerce."

In Terminal Taxicab Co. v. Kutz, 241 U. S. 252, 256, 36 S.Ct. 583, 584, 60 L.Ed. 984, Ann.Cas.1916D, 765, upon which plaintiff places much reliance, the court held that the business of "furnishing automobiles from its central garage on orders" was not common carriage, because " * * * an invitation to the public to buy does not necessarily entail an obligation to sell." But, since in that case "the main question" was whether such operations made the plaintiff a common carrier "under the definition in the act" establishing the Public Utilities Commission of the District of Columbia, it is of no weight on the constitutional issue. Moreover, the Kutz case was decided in pre-Nebbia days. Bell v. Harlan, 57 App. D.C. 255, 20 F.2d 271, is equally inapplicable.

Finding no merit in plaintiff's constitutional argument, we turn to its assertions that, quite apart from any constitutional point, the statute itself shows an intent to treat plaintiff's operations differently from those of a common carrier. We shall deal with its points in turn.

■ First, it asserts that the requirement of "continuous service," imposed by Section 204(a) (1), is not necessary to the proper functioning of such a carrier as it. But the section provides, not that the service must be continuous, but that "the Commission may establish reasonable requirements with respect to continuous and adequate service," which is quite a different matter. We are not prepared to say that *under no circumstances* could continuous service be required of a carrier like the plaintiff; that is the type of issue that should seldom be decided until the facts of a concrete case are before us. Plaintiff is adequately protected against a capricious requirement of "continuous" service by the good sense of the administrative agency and by the oversight of the courts. We find, therefore, no inconsistency between Section 204(a) (1) and the operations of plaintiff.

■ Second, plaintiff argues that Section 217(a)—requiring common carriers to file "tariffs showing all the rates, fares, and charges for transportation, and all services in connection therewith"—is less suited to its business than Section 218(a), which requires contract carriers to file "schedules containing the minimum rates or charges of such carrier." Plaintiff seems to argue that its irregular operations make compliance with the former requirement impossible. We do not see why this is so. The tariffs are to be filed "in such manner and form" and are to contain "such information" as the Commission prescribes, which clearly allows leeway for meeting unusual situations. Even without this flexibility, however, the requirement does not seem to be so burdensome or surprising that we should regard it as inconsistent with the nature of plaintiff's business. If plaintiff can forecast its irregular operations well enough to set minimum rates, it can hardly assert that it is unable to set one fixed rate.

■ Third, plaintiff contends that its operations could not have been intended to come under Section 216(a)—which makes it "the duty of every common carrier of passengers by motor vehicle to establish reasonable through routes with other such common carriers and * * * to establish * * * just and reasonable * * * joint rates"—since such a requirement is not appropriately related to its business. Plaintiff finds confirmation of its construction of the statute in the Commission's admission in its opinion of June 26, 1941, that this requirement "obviously has no application to common carriers who do not operate over regular routes." But it is apparent that persons who even the plaintiff would admit are common carriers may be unable, because of the nature of their oper-

ations, to establish through routes and joint fares. A common carrier whose route does not meet other common carriers, for example, could not meet the requirement, yet it would not be immune from regulation in other respects as a common carrier.

■ Fourth, plaintiff notes that, in issuing a certificate to a common carrier, the Commission may "specify the service to be rendered," Section 208(a), but that, in issuing a permit to a contract carrier, it may specify only the "business of the contract carrier covered thereby and the scope thereof," Section 209(b). This difference in language no doubt reflects Congress' view of what would best serve the public interest. But there is nothing before us indicating that Congress intended to regulate only plaintiff's "business," and not its "service." Its operations would seem to fall consistently into either plan of regulation, and we must look elsewhere for guidance as to the intent of Congress.

■ Fifth, plaintiff points to Section 207 (a),[2] which requires that common carriers operate over regular routes and between fixed termini, and argues that the proviso, authorizing special or charter operations by "such" carriers, shows an intent to restrict the meaning of common carriers to those which operate over regular routes and between fixed termini. But it is apparent that "such" refers to "common carrier of passengers by motor vehicle," and it is clear from Section 203(a) (14)[3] that carriers need not operate over fixed routes to come within the definition of common carriers. The fact that common carriers may be granted the right, under the last clause of Section 207(a), to engage in special and charter operations, does not indicate that such operations are not common carriage. It was, rather, made necessary by the first clause of the proviso (which broadly requires common carriage operations to be over regular routes), since charter and special operations are frequently over irregular routes.

■ There remains the question whether plaintiff is a "common carrier" within the terms of Section 203(a) (14)[4] or merely a "contract carrier" under Section 203(a) (15).[5] Plaintiff contends that there is no "holding out to the general public" where a carrier does not take all comers, but only those who, as a group, negotiate a charter of a bus for a particular journey (so-called charter operations) or those who individually purchase tickets for a particular journey as members of a group assembled by the carrier itself (so-called special operations), i. e., that the statutory definition of "common carrier" does not—but the statutory definition of "contract carrier" does—include charter and special operations. How special operations can be excluded from common carriage, we are entirely unable to perceive. The carrier, in such operations, typically advertises a special excursion and solicits individuals to purchase tickets. Where a carrier engages actively in soliciting individuals to make such trips, there appears to be no reason whatsoever for excluding the operations from common carriage.

Charter operations differ only slightly from special operations; in them, the carrier is not the instigator of the trip, but merely negotiates with a group which is already formed. But in practice, as plaintiff itself asserts, the carrier frequently promotes the organization of such groups. Plaintiff even asserts that the industry recognizes no difference between special and charter operations, and suggests that Congress, in its definition, was repeating itself. This, it would seem, only reinforces

---

[2] Section 207(a) of the Motor Carrier Act, 49 U.S.C.A. § 307(a) provides: "Subject to section 310, a certificate shall be issued to any qualified applicant therefor * * * Provided, however, that no such certificate shall be issued to any common carrier of passengers by motor vehicle for operations over other than a regular route or routes, and between fixed termini, except to such carriers as may be authorized to engage in special or charter operations."

[3] That subsection reads: "The term 'common carrier by motor vehicle' means any person which holds itself out to the general public to engage in the transportation by motor vehicle in interstate or foreign commerce of passengers or property * * * for compensation, whether over regular or irregular routes * * *."

[4] See footnote 3.

[5] That subsection provides: "The term 'contract carrier by motor vehicle' means any person which, under individual contracts or agreements, engages in the transportation (other than transportation referred to in paragraph (14) ) by motor vehicle of passengers or property in interstate or foreign commerce for compensation."

718

the Commission's view that both are common carriage, because the more the carrier actively goes about soliciting individuals to make particular journeys, the more difficult it becomes to separate such operations from the routine solicitation of business by recognized common carriers. But even where negotiations are conducted only with the representative of a group already formed, we think a carrier which engages in charter work holds itself out to the general public as a common carrier, within the statutory definition. We do not think that the mere fact that, in each case, there is a certain amount of dickering over rates, destroys the common character of the business. Nor do we find any conflict between the fact that routes, time of return and similar details must be arranged separately with each group and the common character of the carriage.

The Commission has required all contract carriers of property to operate under (a) bilateral agreements with shippers (b) covering a series of shipments (c) over a period of time. Contracts of Contract Carriers, 1 M.C.C. 628. Although this decision dealt only with carriage of property, its reasoning is equally applicable to passengers, and demonstrates the Commission's view that contracts of carriage covering only individual transactions are common carriage. Cf. Tucker Contract Carrier Application, 2 M.C.C. 335; Walls Common Carrier Application, 7 M.C.C. 138; Blue & Grey Sightseeing Common Carrier Application, 8 M.C.C. 124. In the Contracts of Contract Carriers decision there is a cogent explanation of the necessity for limiting the meaning of contract carriage to repeated transportation over a period of time. We cannot lightly assume that it was the intent of Congress to adopt a definition of common carriage[6] which would distinguish operations whose identical treatment is essential to the proper administration of the Act. The construction adopted by the Commission reasonably comports with the Congressional intention, and we see no reason for departing from it.

The complaint is dismissed. The parties may submit proposed findings and a decree.

---

[6] The definitional sections, set out in footnotes 3 and 5, are the result of amendments made by the Transportation Act of 1940. But in adopting those amendments, Congress gave no indication that it was considering the problem before us, and our conclusion would not have been different if it were based on the unamended sections.