**DOYLE TRANSFER CO., Inc., OF GLASGOW, KY., v. UNITED STATES et al.**

No. 15012.

District Court of the United States for the District of Columbia.

June 2, 1942.

Roberts & McInnis and Edgar Turlington, all of Washington, D. C., for plaintiff.

Irvin L. Stephenson, Daniel W. Knowlton, and Nelson Thomas, all of Washington, D. C., for defendants.

Before MILLER, Associate Justice, United States Court of Appeals for the District of Columbia, and O'DONOGHUE and McGUIRE, Associate Justices, District Court of the United States for the District of Columbia.

McGUIRE, Associate Justice.

This is an action brought by the plaintiff to set aside an order of the Interstate Commerce Commission.

The order under review, issued February 2, 1942, denied the plaintiff's application for a contract carrier permit (Docket No. MC925, Filed Dec. 31, 1935) under the so-called "grandfather" provisions of the Motor Carrier Act, 49 U.S.C.A. §§ 301, 306 (a), 309(a), but did grant it a common carrier certificate under the same provisions of the act, by virtue of an application (Docket No. MC924) seeking the same, filed on the same date as that seeking the contract carrier permit referred to above. The Commission on April 16, 1942 extended the effective date of this order to June 1, 1942. Pursuant to Title 28 U.S. C.A. § 47, the case was heard by a three judge court.

The essential facts with respect to the plaintiff's activities were found substantially to be as follows:[1]

---

[1] "In No. MC–925, by application filed December 21, 1935, as amended, under the 'grandfather' clause of section 209(a) of the Interstate Commerce Act, Doyle

It is a Kentucky corporation and has for more than ten years past performed transportation service as a common carrier of general commodities, with certain exceptions, in interstate commerce over a regular route between Louisville, Kentucky, and Nashville, Tennessee.

For about the same length of time under individual contracts concluded for a period of several years with a single shipper, it has transported the same general commodities, more specifically cotton piece goods, cotton work clothing, buttons, thread, wire goods, and cardboard boxes for all practical purposes over the same route from the shipper's warehouse in Nashville to manufacturing plants in small Kentucky towns, and has transported the same commodities in the finished form of work clothing, principally overalls, jumpers, and shirts, from the manufacturing plants referred to to another warehouse of the shipper in Nashville. (T. 7, 24, 56, 58) Under Section 210 of the Act, 49 U.S.C.A. § 310,[2]

Transfer Company, Inc., of Glasgow, Ky., seeks a permit authorizing continuance of operation as a contract carrier by motor vehicle, in interstate or foreign commerce, of cotton piece goods, cotton work clothing, thread, buttons, wire goods, (overall loops and hooks), and cardboard boxes, between Louisville, Ky., and Nashville, Tenn., over a regular route, from Louisville over U. S. Highway 31W to Elizabethtown, Ky., thence over U. S. Highway 31E to Nashville, serving Scottsville, Glasgow, and Elizabethtown, Ky., as intermediate points. Certain rail and motor carriers oppose the application, and the Washington Manufacturing Company intervened on behalf of the applicant.

"In the prior report, 29 M.C.C. 284, division 5, found that applicant's operations were and are those of a common carrier by motor vehicle and that it was entitled to a certificate under the 'grandfather' clause of section (206(a) of the act authorizing operation, in interstate or foreign commerce, of cardboard boxes and materials used in the manufacture of cotton garments from Nashville, Tenn., to Scottsville, Ky., and of finished cotton garments from Elizabethtown, Ky., to Nashville, over a specified route, and denied the application in all other respects. Upon petition of applicant we reopened the proceeding for reconsideration on the record as made and vacated and set aside the prior order herein. At the same time we also reopened for reconsideration, upon our own motion, applicant's common carrier application, No. MC-924, which has been handled informally. For convenience and in order that our discussion of the issues presented may be clear, we shall restate certain of the facts set forth in the prior report.

"On November 13, 1940, in No. MC-924, division 5, granted applicant a certificate authorizing operation, in interstate or foreign commerce, as a common carrier by motor vehicle of general commodities, with certain exceptions, between Louisville and Nashville over the same route applicant here seeks authority to use as a contract carrier, with service at certain intermediate and off-route points, which, insofar as here pertinent, restricts service from and to Scottsville and all intermediate points between Scottsville and Nashville to southbound traffic, and from and to Hodgenville and those between Hodgenville and Louisville and to northbound traffic.

"In addition to the above authorized carrier operations, applicant has, since 1931, transported cotton piece goods, cotton work clothing, buttons, thread, wire goods, and cardboard boxes for the Washington Manufacturing Company of Nashville, hereinafter called the shipper. From 1931 until January 1, 1934, this service was performed under an oral arrangement with the shipper. Operations performed since January 1, 1934, have been conducted under a written contract. The service consists of the transportation of cotton piece goods, buttons, thread, wire goods (overall loops and hooks), and flat cardboard boxes from the shipper's plant or warehouse at Nashville to 'cut-make-and-trim' factories at Scottsville, Glasgow, Elizabethtown, and Louisville, where the materials are made into work clothing, principally overalls, jumpers, and shirts, and of the return of the finished garments to the shipper's warehouse at Nashville. At times applicant also has transported these commodities between the designated factory points. This transportation performed between the named Kentucky points appears to be intrastate in character and no authority is required from this Commission for the continuance thereof. The tonnage handled by applicant under its contract with the shipper varies from 1½ to 2 million pounds annually."

[2] "Unless, for good cause shown, the Commission shall find, or shall have found, that both a certificate and a permit may be so held consistently with the public interest and with the national transportation policy declared in the Interstate Commerce Act—

"(1) no person, or any person control-

these dual operations in the same territory cannot be performed unless they be found consistent with the public interest and the national transportation policy.

The plaintiff claims that the Commission erred in denying its application for a contract carrier permit, and in its finding that the operations conducted by it under contract with the single shipper have been those of a common carrier.

It contends:

1. The Commission has erroneously construed the statutory definition of a contract carrier by motor vehicle.

2. The so-called test of "specialization" applied by the Commission should not have been applied, and if it should, it was applied arbitrarily and capriciously in the present case.

3. The Commission's findings as to material facts are not supported by substantial evidence.

4. The denial of the plaintiff's application as a contract carrier by motor vehicle and the imposition upon it of the duties of common carrier exclusive of its relationship with the individual shipper is at variance with the principles of the Fifth Amendment.

We find no merit in these contentions.

As to the first that the Commission has erroneously construed the statutory definition of a contract carrier by motor vehicle, Part II of the Interstate Commerce Act, 49 U.S.C.A. Chapter 8, as amended September 18, 1940, reads:

"Sec. [§] 303. Definitions and exceptions

"(a) Definitions.

\* \* \* \* \*

"(14) The term 'common carrier by motor vehicle' means any person which holds itself out to the general public to engage in the transportation by motor vehicle in interstate or foreign commerce of passengers or property or \* \* \* for compensation, \* \* \*.

"(15) The term 'contract carrier by motor vehicle' means any person which, under individual contracts or agreements, engages in the transportation (other than transportation referred to in paragraph (14) and the exception therein) by motor vehicle of passengers or property in interstate \* \* \* commerce \* \* \*."

The Commission in the instant case not only applied the statutory definition of common carriage thus set forth, which is essentially that of the common law, but went further and applied also the so-called secondary test of "specialization" used by it to determine as to whether or not there was an actual "holding out", thus bringing the plaintiff within the terms of the statute.

■ This specialization test so applied has been held to consist either in the nature of the actual physical operations or in respect to the shippers served, and that in the absence of such, contract carriage could not be found to exist.[3] The rulings of the Commission in construing the definition of

---

ling, controlled by, or under common control with such person, shall hold a certificate as a common carrier authorizing operation for the transportation of property by motor vehicle over a route or within a territory, if such person, or any such controlling person, controlled person, or person under common control, holds a permit as a contract carrier authorizing operation for the transportation of property by motor vehicle over the same route or within the same territory; and

"(2) no person, or any person, controlling, controlled by, or under common control with such person, shall hold a permit as a contract carrier authorizing operation for the transportation of property by motor vehicle over a route or within a territory, if such person, or any such controlling person, controlled person, or person under common control, holds a certificate as a common carrier authorizing operation for the transportation of

property by motor vehicle over the same route or within the same territory. Feb. 4, 1887, c. 104, Part II, § 210, as added Aug. 9, 1935, c. 498, 49 Stat. 554 and amended Sept. 18, 1940, c. 722, Title I, §§ 16, 21(a), 54 Stat. 919, 923."

[3] N.S. Craig Contract Carrier Application, decided Dec. 1, 1941. Docket No. MC5724:

"The specialization which we have in mind may consist in the rendition of other than the usual physical services for the purpose of supplying the peculiar needs of a particular shipper, such, for example, as the furnishing of equipment especially designed to carry a particular type of commodity, the training of employees in the handling of the particular commodities, or in the supplying of related nontransportation services such as the assembling, placing, or servicing of machinery. Or it may consist of nothing more than the devotion of all of a carrier's efforts to the service of a par-

the contract carrier in the Act of 1935 before its amendment by the Act of 1940 appear to be uniform.

In Pregler Extension of Operation, 23 M.C.C. 691, 695, it was held a contract carrier must perform "special and individual service which is required by the peculiar needs of a particular shipper."

This strict construction of the definition of "contract carrier" is also in accord with the declaration of policy found in Section 202(a) of the original Motor Carrier Act, and now found in Section 1 of the Transportation Act of 1940, 49 U.S.C.A. preceding section 301.[4]

Again this strict construction appears also to be plainly within the intent of Congress.[5]

■ One of the purposes indicated in the statement of policy that motivated the Congress in the passage of the act, infra, was to do away with "unfair or destructive competitive practices * * *" which would prevail if a contract carrier was permitted to operate in the area served by common carrier.

■ The fact that the so-called Craig decision was one not made by a unanimous Commission is of no significance, as the legal effect of such a finding is the same as if supported by all the members. Baltimore & O. Railroad Co. v. United States, 298 U.S. 349, 56 S.Ct. 797, 80 L.Ed. 1209.

■ The rulings of the Commission are entitled to great weight, and the function of the courts is to construe the language of the statute so as to give effect to the intent of Congress. This is axiomatic and especially true where the interpretations involve "contemporaneous construction of a statute by the men charged with the responsibility of setting its machinery in motion; of making the parts work efficiently and smoothly while they are yet untried and new." United States v. American Trucking Associations, 310 U.S. 534, at page 549, 60 S.Ct. 1059, at page 1067, 84 L.Ed. 1345; Norwegian Nitrogen Co. v.

---

ticular shipper, or at most a very limited number of shippers under a continuing arrangement which makes the carrier virtually a part of the shipper's organization.

"We recognize, of course, that even a specialization in physical operations does not necessarily negative a common carrier status where, for example, such physically specialized services are affirmatively held out to all shippers in that particular class of the public having need therefor. But, on the other hand, we are convinced that the lack of one or the other forms of specialization above-indicated conclusively negatives contract carriage as contemplated by Section 203(a) 15 of the act.

4 The Act of September 18, 1940, Chapter 722, Title 1, 54 Stat. 899, amended the Interstate Commerce Act by inserting before Part 1 thereof the following provision:

"It is hereby declared to be the national transportation policy of the Congress to provide for fair and impartial regulation of all modes of transportation subject to the provisions of this Act. (chapters 1, 8, and 12 of this title), so administered as to recognize and preserve the inherent advantages of each; to promote safe, adequate, economical, and efficient service and foster sound economic conditions in transportation and among the several carriers; to encourage the establishment and maintenance of reasonable charges for transportation services, without unjust discriminations, undue preferences or advantages, or unfair or destructive competitive practices; to cooperate with the several States and the duly authorized officials thereof; and to encourage fair wages and equitable working conditions;—all to the end of developing, coordinating, and preserving a national transportation system by water, highway, and rail, as well as other means, adequate to meet the needs of the commerce of the United States, of the Postal Service, and of the national defense. All of the provisions of this Act (chapters 1, 8, and 12 of this title) shall be administered and enforced with a view to carrying out the above declaration of policy."

5 When the conference report on the bill which subsequently became the Transportation Act of 1940 was introduced in the Senate, it was specifically stated by Senator Truman, (86 Congressional Record 11,546) who was in charge of the legislation, "It is intended by the definition of contract carriers to limit that group to those who operate under individual contracts and who render a specialized service which is required by the peculiar needs of a particular shipper and who do not come within the definition of common carriers."

And further, "It is intended that all over-the-road truckers shall whenever possible fall within the description of common carriers."

United States, 288 U.S. 294, at page 315, 53 S.Ct. 350, 77 L.Ed. 796.

The correctness of the conclusion of the Commission which the plaintiff challenges, that under the specialization test so applied, it is a common rather than a contract carrier, is demonstrated by the finding and borne out by the evidence.

The finding was that the plaintiff had devoted three vehicles exclusively out of a total of thirteen to the shipper's transportation needs between the points for which authority was requested. (T. 18.)

The equipment consisted of ordinary trucks not especially made or adapted to fit the shipper's transportation needs, while the applicant has held itself out to the public to transport general commodities as a common carrier between points and over the same route for which authority was requested to operate as a contract carrier. (T. 41, 56, 57.) Again it was found that "neither the mode of receiving, transporting, and delivering of freight, the type of commodities transported, the class of shippers served, nor any other feature can be pointed to as distinguishing applicant's service for the shipper from common carriage." (Docket No. MC925, 286.) "Although it is necessary for the shipper to have the daily use of applicant's vehicles, its representative admitted that outside of the rate advantage, he knew of no reason why applicant's service for his company could not be performed equally as satisfactorily as a common carrier * * *." Id.

Except for a rate concession, the same service was held out to all other shippers under slightly different arrangements.

The plaintiff, however, argues further that the test of specialization is met by it by virtue of its contract with the shipper and the fact that the shipper is able to continue its "farming-out" method of production, and that thus the plaintiff's service is "coordinated with shipper organization." (T. 39, 40.) We cannot agree. If there is any such, it appears to be the reduced rate which the shipper received, while the specialization of physical operation, so-called, appears to be that of the shipper rather than of the plaintiff.

"Whether an applicant seeking exemption [from the requirement of proving factual convenience and necessity] had in fact been in operation within the immunizing period of the statute was bound to raise controverted matters of fact. Their

determination Congress entrusted to the Commission." United States v. Maher, 307 U.S. 148, 154, 155, 59 S.Ct. 768, 771, 83 L.Ed. 1162.

■ The provisions of the act requiring proof of public convenience and necessity, upon which the necessary certificate or permit is issued for operators otherwise inhibited, are remedial, to which the so-called "grandfather" sections (206(a) and 209(a) establish exceptions, and such sections must be read in harmony with the purpose of the act itself and extend to those carriers plainly within its terms. McDonald v. Thompson, 305 U.S. 263, 59 S.Ct. 176, 83 L.Ed. 164.

■ After full hearing, the Commission has found and set forth basic and primary findings which lead as they must to its final conclusion of fact that the operations of the plaintiff are those of a common carrier. This is sufficient. Saginaw Broadcasting Co. v. Federal Communications Comm., 68 App. D.C. 282, 96 F.2d 554, 559, 560; United States v. Baltimore & O. Railroad, 293 U.S. 454, 464, 465, 55 S.Ct. 268, 79 L.Ed. 587.

It cannot be said that the Commission's finding deprives the plaintiff of its property without due process of law. The test applied represents no departure from the fundamental concepts involved. After a full examination of the record, we hold that the finding made had a basis in substantial evidence and was not arbitrary or capricious. Shields v. Utah Idaho Cent. Railroad Co., 305 U.S. 177, 185, 59 S.Ct. 160, 83 L.Ed. 111.

■ The Fifth Amendment in the field of federal activity does not prohibit governmental regulation for the public welfare. It, like the Fourteenth as applied to the States, conditions or limits the exercise of the admitted power, by seeing that the end accomplished shall be achieved by methods consistent with due process, which demands only that the law shall not be unreasonable, arbitrary, or capricious, and that the means chosen shall have a real and substantial relation to the object sought to be attained—the reasonableness of each regulation depending upon the pertinent facts. Nebbia v. People of State of New York, 291 U.S. 502, 525, 54 S.Ct. 505, 78 L.Ed. 940, 89 A.L.R. 1469; United States v. Joint Traffic Association, 171 U.S. 505, 559, 571, 573, 19 S.Ct. 25, 43 L.Ed. 259; Atlantic Coast Line v. Riverside Mills,

219 U.S. 186, 31 S.Ct. 164, 55 L.Ed. 167, 31 L.R.A.,N.S., 7; Chicago, B. & Q. Railroad Co. v. McGuire, 219 U.S. 549, 31 S.Ct. 259, 55 L.Ed. 328.

We do not feel that the plaintiff on the facts presented is being compelled to transmute or to alter radically its type of operation, but on the contrary, by denominating it a common carrier, the Commission has catalogued its activities within their proper sphere. Fordham Bus Corp. v. United States, D.C.S.D.N.Y., 41 F.Supp. 712.

With reference to the suggestion of the applicant, that such discrimination as might arise, if dual authority were granted it, could be obviated by deleting from its certificate of common carriage the commodities for which contract carriage authority is sought, we express no opinion. The only matter before this court is the validity of the order under review.

The complaint is dismissed, and parties may submit proposed findings and decree.