**CORNELL STEAMBOAT CO. v. UNITED STATES.**

District Court, S. D. New York.

July 7, 1943.

Judgment Affirmed April 3, 1944.

See 64 S.Ct. 768.

Kirlin, Campbell, Hickox, Keating & Mc-Grann, of New York City (Robert S. Erskine, of New York City, of counsel), for plaintiff.

Robert L. Pierce, Sp. Asst. to Atty. Gen., for the United States.

E. M. Reidy, Asst. Chief Counsel, of Washington, D. C., for Interstate Commerce Commission.

Tom C. Clark, Asst. Atty. Gen. (Daniel W. Knowlton, of Washington, D. C., of counsel), for the United States.

Foley & Martin, of New York City (James A. Martin and Christopher E. Heckman, both of New York City, of counsel), for National Water Carriers Ass'n, Inc., intervenor.

Bingham, Dana & Gould, of Boston, Mass., for Boston Tow Boat Co., Intervenor.

FRANK, Circuit Judge.

■ 1. Plaintiff contends that, as a tower, it is not a "carrier by water" within the meaning of the Act. We cannot agree. Plaintiff literally "engage[s] in the transportation by water * * * of * * * property * * * for compensation," which is the test under § 302(c) and (d). For the dictionary tells us that, nautically, to transport is "to haul a vessel by hawsers." And a barge is both a "vessel" and "property." Section 302(h) states that transportation "includes the use of any transportation facility" and § 302(g) includes, in the term "transportation facility," "any vessel," while "vessel," in turn, is defined in § 302(f) to mean "any watercraft."[6] Plaintiff, however, argues that § 302(g) also defines "transportation facility" to include "any * * * wharf," and yet the Commission has held that wharfingers are not within the Act;[7] but the Commission so held because the legislative history showed a clear Congressional intent to exclude wharfingers. Finally, and most important, § 303(f) (2) which expressly excludes certain kinds of towage would be meaningless if towage generally were not included; and plaintiff's activities are not within the excluded varieties of towage.

■ 2. Plaintiff argues that even if it be a "carrier by water" within the meaning of the Act, it is not a "common carrier by water." Plaintiff points to decisions in which, before the passage of this Act, persons engaged in activities such as that in which it engages were held not to be common carriers. It is suggested that, accordingly, the constitutional power of Congress to regulate plaintiff as a common carrier is doubtful and that a statute should be so construed as to avoid raising grave doubts as to its constitutionality. But, since Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940, 89 A.L.R. 1469, Olsen v. State of Nebraska, 313 U.S. 236, 61 S.Ct. 862, 85 L.Ed. 1305, 133 A.L.R. 1500, there have been no such doubts; for it is now well settled that "there is no closed class or category of * * * businesses affected with a public interest." [291 U.S. 502, 54 S.Ct. 506, 78 L.Ed. 940.] There is no need to repeat here what was said in Fordham Bus Corporation v. United States, D.C., 41 F. Supp. 712, 715, where this very question was fully discussed with reference to the regulation of motor carriers under Part II of this Act.[8]

■ We fail to understand plaintiff's contention that, because it was not a common carrier for purposes of liability under the Harter Act, 46 U.S.C.A. § 190 et seq., or otherwise in Admiralty or at common law, this Act should be construed as not intended to include it as a common carrier; for in § 320(d)[9] Congress showed that it had in mind the difference between the question of liability and that of regulation. By labeling persons such as plaintiff "common carriers" in this Act, they do not become such for all purposes; this is made clear by § 302 which, in so labeling them, expressly states that it does so "for the purposes of this Act." And see State of Washington ex rel. Stimson Lumber Co. v. Kuykendall, 275 U.S. 207, 211, 212, 48 S.Ct. 41, 72 L.Ed. 241; United States v. Brooklyn Eastern Dist. Terminal, 249 U.S. 296, 304, 39 S.Ct. 283, 63 L.Ed. 613, 6 A.L.R. 527; Liverpool & G. W. Steam

---

[6] Cf. Union Stock Yard & Transit Co. v. United States, 308 U.S. 213, 217, 60 S. Ct. 193, 84 L.Ed. 198.

[7] Status of Wharfingers, 251 I.C.C. 613.

[8] Cf. Alton R. Co. v. United States, 315 U.S. 15, 23, 62 S.Ct. 432, 85 L.Ed. 586, which indicated that one who was a "contract carrier" under a state permit can claim "grandfather" rights as a common carrier under Part II of this Act, 49 U.S. C.A. § 301 et seq.

[9] § 320(d) reads: "Nothing in this part shall be construed to affect any law of navigation, the admiralty jurisdiction of the courts of the United States, liabilities of vessels and their owners for loss or damage, or laws respecting seamen, or any other maritime law, regulation, or custom not in conflict with the provisions of this Part."

354

Company v. Phenix Insurance Co., 129 U.S. 397, 440, 9 S.Ct. 469, 32 L.Ed. 788.

That plaintiff supplies merely the hauling power and has no contractual relations with those who ship their goods on the barges towed by plaintiff is irrelevant, as appears from decisions as to similar situations with respect to railroad carriers under Part I of this Act, 49 U.S.C.A. § 1 et seq.[10]

Plaintiff urges that Congress could not have intended it to be classified as a common carrier under the Act because it was not such before the passage of the Act and because the "grandfather" clause, § 309(a), provides that, if a carrier was in operation "as a common carrier by water" on a stated date before the Act was enacted, it is entitled to a "grandfather" certificate. But clearly what Congress meant was that a person is entitled to such a certificate if, on the specified date before the enactment of the legislature, it had been engaged in activities which, after the statute went into effect, would constitute it a common carrier.[11]

There is substantial evidence to sustain the Commission's finding that plaintiff so "holds itself out to the general public," see § 302(d), that it is a "common" and not a "contract carrier." The differentiation between a "common" and a "contract" carrier is well explained by Judge McGuire in Doyle Transfer Co. v. United States, D.C., 45 F.Supp. 691;[12] that case, to be sure, related to Part II of the Act, 49 U.S.C.A. § 301 et seq., but the definitions of "common" and "contract" carriers in Parts II and III are identical (excepting that in the latter "by water" appears in the place of "by motor vehicle.") See also Fordham Bus Corporation v. United States, D.C., 41 F.Supp. 712, 717, 718.

It goes without saying that, since there is substantial evidence to support the Commission's finding, we must sustain it, whether or not we would have made that finding,[13] and also that it is not our province to consider the wisdom of the legislation. On the basis of the finding, we hold that the Commission's conclusion and order was not erroneous.

3. Plaintiff argues that, in any event, it is not engaged in transportation, under § 302(i) (1), "wholly by water from a place in a State to a place in any other State." Literally, of course, it is, for it transports from a "place" in the waters of New York to a "place" in the waters of New Jersey.

The language of Part I, § 1(1), 49 U.S.C.A. § 1(1), as to railroads is virtually the same, i.e., "from one State * * * to any other State." That language was construed, many years before the enactment of Part III, to apply to continuous transportation beginning in a state, running through a second state, and returning to the first state. Missouri Pacific R. R. Co. v. Stroud, 267 U.S. 404, 45 S.Ct. 243, 69 L.Ed. 683; United States v. D. L. & W. R. Co., C.C., 152 F. 269. It is true that this interpretation has been said (152 F. at page 272) to be strengthened by the fact that § 1(2) in Part I provides that jurisdiction over railroads shall not apply "to the transportation * * * wholly within one State." But § 303(k) in Part III similarly precludes jurisdiction, as to water carriers, over "intrastate transportation." As the Commission says, if the words "wholly within one State" in Part I fortify the conclusion that it has jurisdiction under Part I over transportation between points in a single state through another state, the language quoted above from § 303(h) fortifies a similar conclusion under Part III.

---

[10] United States v. California, 297 U.S. 175, 182, 183, 56 S.Ct. 421, 80 L.Ed. 567; Union Stock Yard & Transit Co. v. United States, 308 U.S. 213, 219, 60 S.Ct. 193, 84 L.Ed. 198; United States v. Brooklyn Terminal, 249 U.S. 296, 305, 39 S.Ct. 283, 63 L.Ed. 613, 6 A.L.R. 527; Belt Ry. Co. v. United States, 7 Cir., 168 F. 542, 544, 22 L.R.A.,N.S., 582; United States v. Sioux City Stockyard Co., C.C., 162 F. 556.

[11] Note that the "grandfather" clause of Part II, as to motor carriers, § 206(a) 49 U.S.C.A. 306(a), is identical in language with § 309(f) and see Alton R. Co. v. United States, 315 U.S. 15, 23, 62 S.Ct. 432, 86 L.Ed. 586; cf. Fordham Bus Corp. v. United States, D.C., 41 F.Supp. 712.

[12] See the legislative history and the Commission decisions there cited and quoted.

[13] See, e. g., Sperry Gyroscope Co., Inc. v. N. L. R. B., 2 Cir., 129 F.2d 922, 924, and cases there cited in note 1.

That there were dissenting opinions filed by some of the Commissioners is immaterial. Cf. Virginian Ry. v. United States, 272 U.S. 658, 674, 675, 47 S.Ct. 222, 71 L.Ed. 463.

Plaintiff points to the fact that, in 1935, Congress, in § 203(a) (10), Part II, 49 U.S.C.A. § 303(a) (10), as to interstate motor carriers, conferred jurisdiction by expressly defining "interstate commerce" to mean "commerce between any place in a State and any *place in another State or between places in the same State through another State*."[14] Plaintiff argues that the omission from the definition of "interstate transportation" in Part III of the words we have italicized in this provision in Part II conclusively shows that Congress did not intend to confer such jurisdiction as to water carriers. Had Parts II and III been enacted at the same time, that argument would have been most persuasive; but Part III was enacted in 1940, five years after the enactment of Part II. Congress must be deemed to have known in 1940 that the courts had held that the language employed in Part I had precisely the meaning of the language employed in Part II. Congress then had a choice of two methods of expressing the same intention; therefore, no significance can be given to the fact that, when it enacted Part III in 1940, it selected the language which it had used in Part I rather than the language which it had used in Part II.[15]

Plaintiff places much reliance on Cornell Steamboat Co. v. Sohmer, 235 U.S. 549, 35 S.Ct. 162, 59 L.Ed. 355. There this very plaintiff was subject to a tax imposed by a statute of the State of New York, for the privilege of doing business as a corporation, equal to a percentage of the gross earnings on transportation originating and terminating in that State; the statute expressly provided that the tax would not apply to earnings derived from interstate business. The State assessed the tax on earnings from towage between New York ports which passed through New Jersey waters. Plaintiff in that case contended that such traffic was interstate and not constitutionally taxable by the State, but the Supreme Court held otherwise. There is substantially no difference between the way traffic is now handled by plaintiff and the way it was then handled as described in that opinion. Accordingly, plaintiff argues that it has been held that it is not engaged in interstate commerce, and is therefore not subject to the Commission's jurisdiction. In so far as this is a contention that Congress lacks the power constitutionally to regulate plaintiff under the Commerce clause, the contention must fail. Criteria employed in determining whether a state may validly tax because of the Commerce clause are not applicable to a determination whether the federal government may validly regulate under that clause. The Sohmer case itself relies upon, and cites, Lehigh Valley R. R. v. Pennsylvania, 145 U.S. 192, 12 S.Ct. 806, 36 L.Ed 672, and Ewing v. City of Leavenworth, 226 U.S. 464, 33 S.Ct. 157, 57 L.Ed. 303, where that distinction is clearly made. See also Hanley v. Kansas City Southern Ry. Co., 187 U.S. 617, 621, 23 S.Ct. 214, 47 L.Ed. 333.

Plaintiff also suggests that the Sohmer decision is a finding of fact, conclusive for all purposes, that it is engaged in intrastate commerce. The answer is that the "finding" was there made with reference to the power of the State to tax. In the instant case, the Commission, after a hearing, has made an express finding that plaintiff is engaged in interstate transportation as that term is defined in Part III.[16]

Pursuant to Federal Rules of Civil Procedure, rule 52, 28 U.S.C.A. following section 723c, we are filing herewith our findings of fact and our separate conclusions of law; as provided in that Rule, we will entertain a motion by either party that we amend the findings or make additional findings.

Dismissed.

COXE and BRIGHT, District Judges, concur.

---

14 Italics added.

15 These comments also answer a possible suggestion based upon the definition of "interstate commerce," similar to that used in Part II, in § 402(a) (6) of Part IV, 49 U.S.C.A. § 1002(a) (6), that Part having been enacted in 1942, two years after the enactment of Part III.

16 The Commission urged that we apply the doctrine of such cases as Gray v. Powell, 314 U.S. 402, 413, 62 S.Ct. 326, 86 L.Ed. 301, as to the weight to be given to administrative interpretations of the statute. We have found it unnecessary to do so. Cf. Hartford Electric Light Company v. Federal Power Comm., 2 Cir., 131 F.2d 953, 966.