**SALEM TRANSPORTATION CO., Inc.,**
**Plaintiff,**

v.

**UNITED STATES of America and Interstate Commerce Commission,**
**Defendants,**

and

**Public Service Coordinated Transport; Lincoln Transit Co., Inc.; D & M Taxi Company, Inc.; National Bus Traffic Association, Inc.; National Trailways Bus System; Safeway Trails, Inc., Intervening Defendants.**

Nos. 67 Civ. 2056, 67 Civ. 2971,
67 Civ. 3360, 67 Civ. 3997,
67 Civ. 4983.

United States District Court
S. D. New York.
June 6, 1968.

See also D.C., 43 F.R.D. 389.

George H. Rosen, Monticello, N. Y. (William C. Rosen, Monticello, N. Y., of counsel), for plaintiff.

Fritz R. Kahn, Deputy Gen. Counsel Robert W. Ginnane, Gen. Counsel, Jerome Nelson, John E. Faulk and Barry Roberts, Washington, D. C., Counsel, Donald F. Turner, Asst. Atty. Gen., Robert M. Morgenthau, U. S. Atty., Michael D. Hess, New York City, and John H. D. Wigger, Washington, D. C., Attys., for defendants Interstate Commerce Commission and United States.

Harold Weideli, Jr., Maplewood, N. J. (Richard Fryling, Maplewood, N. J., Andrew P. Dachnowicz, New York City, and Thomas J. McCluskey, Maplewood, N. J., of counsel), for intervening defendant, Public Service Coordinated Transport.

Robert E. Goldstein, New York City, for intervening defendant, Lincoln Transit Co., Inc.

John D. Hawke, Jr., Washington, D. C., for intervening defendant, D&M Taxi Co., Inc.

Harold J. Drescher, New York City (John S. Fessenden, Washington, D. C., of counsel), for intervening defendant, National Bus Traffic Ass'n, Inc.

Bruce E. Mitchell, Washington, D. C. (James E. Wilson, Washington, D. C., of counsel), for intervening defendants, National Trailways Bus System and Safeway Trails, Inc.

Before FRIENDLY, Circuit Judge, and CANNELLA and MANSFIELD, District Judges.

## OPINION

FRIENDLY, Circuit Judge:

Salem Transportation Co., holder of various authorizations from the Interstate Commerce Commission to engage in "special operations" involving non-sched-

uled door-to-door transportation of passengers, has brought five actions against the United States and the Interstate Commerce Commission. In three of these Salem complains of the Commission's refusal to grant additional authorizations which it sought and in a fourth of the Commission's grant of an authorization to a competitor, D & M Taxi Company, Inc. A fifth action challenges the Commission's refusal to allow Salem to engage in charter operations "to any place" in the absence of evidence of public need, as Salem would have been able to do if it had been a regular route operator, and its finding that Salem exceeded its authority by transporting airplane crews between McGuire Air Force Base in New Jersey and John F. Kennedy International Airport in New York at a flat rate per vehicle.

██ The complaints as to the Commission's refusal to widen Salem's authority and its grant of a competitor's application do not warrant detailed discussion. Salem is simply asking this court to appraise the evidence differently than the Commission did. That is not the function Congress has assigned to us. We are "limited to ascertaining whether there is warrant in the law and the facts for what the Commission has done." United States v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, 535–536, 66 S. Ct. 687, 90 L.Ed. 821 (1946). There plainly was. Salem's claim that the Commission applied one standard to it and a different one to its competitors, notably the intervenor D & M Taxi Company, while doubtless sincerely held, is not made out. Cf. Greyhound Lines, Inc. v. United States, N.D.Ill. 285 F.Supp. 318 decided May 9, 1968. Whether the Commission's whole approach to author-

izations for door-to-door service might not usefully be liberalized [1] is a question of transportation policy for which it rather than this court has responsibility.

Salem's contention as to charter authority requires construction of two provisions of the Motor Carrier Act of 1935. A proviso to § 207(a) directs that no certificate "shall be issued to any common carrier of passengers by motor vehicle for operations over other than a regular route or routes, and between fixed termini, except as such carriers may be authorized to engage in special or charter operations." Salem's certificates, as noted, have been issued under the exception for special operations. Section 208(c) as enacted provided:

"Any common carrier by motor vehicle transporting passengers under a certificate issued under this part may transport in interstate or foreign commerce to any place special or chartered parties under such rules and regulations as the Commission shall have prescribed."

██ The Commission was early faced with the question whether § 208(c) applied, as Salem contends and the strict letter would suggest, to carriers "authorized to engage in special or charter operations" under the exception to the proviso of § 207(a). As regards persons authorized under § 207(a) to engage in charter operations a negative answer was clearly mandated. It would be anomalous in the last degree to read the statute as telling the Commission to issue a certificate for such operations under the exception to § 207(a), circumscribed by evidence of public need, only to find that it had thereby granted the holder authority to engage in precisely the same kind of operation "to any place." While

1. We here refer to the Commission's requiring conventional proof of public convenience and necessity for such seemingly unmomentous matters as (1) increasing authorized capacity on a particular run from 8 to 11 passengers, the latter being the size vehicle generally used by Salem, (2) servicing LaGuardia as well as Kennedy International Airport from or to Philadelphia and Wil-

mington, where the advantages appear obvious and there is no apparent disadvantage to the public convenience and necessity, and (3) transporting "express" items and newspapers between points already served, at least where no other "door-to-door" service appears to exist (e. g., between Philadelphia and New York airports).

the logical inconsistency was not quite so clear in the case of "special operations," the Commission was warranted in believing that Congress could not have intended that a person authorized to engage in a special service in a defined area should thereby be automatically entitled to operate charter service to any place in the United States or foreign countries reachable by highway.

■ From the earliest days the Commission has read § 208(c) as "incidental to the holding of a certificate for the transportation of passengers between fixed termini over a regular route or routes * * *", Peninsula Transit Corp. Common Carrier Application, 1 M.C.C. 440, 442 (1937). It has, beginning with Red Star Sightseeing Line, Inc., Common Carrier Application, 1 M.C.C. 521, 526 (1937), consistently admonished recipients of certificates authorizing special or charter operations that these do not carry with them "any right to transport in interstate or foreign commerce to any place special or chartered parties under section 208(c)." Indeed, the Commission specifically considered and rejected the arguments of various parties for a more literal reading of § 208(c) in the rule-making proceeding in Ex Parte No. MC–29, Regulations Governing Special or Chartered Party Service, 29 M.C.C. 25, 26–27 (1941). Such a construction by the agency charged with administration of a statute, well within the bounds accorded by recognized principles of interpretation, is entitled to great weight. Brotherhood of Maintenance of Way Employees v. United States, 366 U.S. 169, 179, 81 S.Ct. 913, 6 L.Ed.2d 206 (1961).

■ While this would be enough, the legislative history lends support to the Commission's view. Believing that § 208(c) even as construed by it was too broad, the Commission asked Congress to make this provision inapplicable to certificates issued in the future. In recommending an amendment, subsequently adopted, 80 Stat. 1521 (1966), which limited § 208(c) to "a certificate issued un-

der this part pursuant to an application filed on or before January 1, 1967, or under any reissuance of the operating rights contained in such certificate," the Congressional Committees characterized the section as permitting "any regular route common carrier of passengers by motor vehicle" to engage in charter operations. S.Rep. No. 1552, 89th Cong. 2d Sess. 1–3 (1966); H.R.Rep. No. 2265, 89th Cong.2d Sess. 1–2 (1966). The intention that unrestricted charter authority should inhere only in carriers possessing general common carrier authorizations was thus made manifest.

■ The Commission's decision that Salem's transportation of airplane crews on a fixed charge per vehicle basis was a charter operation lay well within its powers. See Fordham Bus Corp., Common Carrier Application, 29 M.C.C. 293, 297 (1941), sustained in Fordham Bus Corp. v. United States, 41 F.Supp. 712 (S.D.N.Y. 1941).

All the complaints are therefore dismissed; the Clerk is directed to enter judgment accordingly.