**GREYHOUND LINES, INC., Plaintiff,**

v.

**MONROE BUS CORP. and Gitty Ungar d/b/a/ Washington Deluxe Bus Co. Defendants.**

**No. CIV.02–2009(RCL).**

United States District Court,
District of Columbia.

March 26, 2004.

Fritz Reiner Kahn, Washington, DC, for Plaintiff.

Gordon Pier MacDougall, Washington, DC, for Defendants.

## MEMORANDUM OPINION AND ORDER

LAMBERTH, District Judge.

Before the Court is the defendants' Motion for Summary Judgment, requesting judgment in their favor and dismissal of the plaintiff's complaint pursuant to Fed. R.Civ.P. 56(b).

Upon consideration of the defendants' motion, the applicable law and the record in this case, the Court finds there are genuine issues of material fact that are in dispute. Therefore, the Court will deny the defendants' Motion for Summary Judgment.

## BACKGROUND

On October 15, 2002, the plaintiff, Greyhound Lines, Inc., filed the instant action against the defendants, Monroe Bus Corp. and Gitty Ungar, alleging that the defendants conducted unauthorized scheduled, regular-route motor carrier operations between New York and Washington, D.C. in violation of 49 U.S.C. §§ 13901, 14704(a)(2) and 14707(a), thereby, injuring plaintiff Greyhound by diverting passengers and revenue. At some point after this suit was instituted, defendant Monroe Bus Corp. applied for and received registration to conduct a scheduled, regular-route motor carrier operation pursuant to § 13901. Defendant Ungar has not attempted to procure § 13901 registration, and continues to engage in the allegedly violative behavior. Therefore, plaintiff Greyhound seeks only compensatory and punitive damages from defendant Monroe Bus Corp. for the revenue loss that it suffered during the period in which defendant Monroe Bus Corp. operated without a § 13901 registration certificate, as well as attorneys' fees. Plaintiff Greyhound still seeks injunctive relief against defendant Ungar

and compensatory and punitive damages for the revenue loss it suffered, and continues to suffer, as a result of her violation of the § 13901 registration requirement, as well as attorneys' fees.

The defendants moved for summary judgment on the action in its entirety pursuant to Fed.R.Civ.P. 56(b). Plaintiff Greyhound did not cross-move for summary judgment.

### I. Undisputed Facts

Plaintiff Greyhound is a scheduled, regular-route motor carrier passenger service in interstate commerce, pursuant to authority granted by the Federal Motor Carrier Safety Administration of the United States Department of Transportation ("FMCSA").[1] Plaintiff Greyhound is incorporated in Delaware and conducts business between New York and Washington, D.C. from a terminal located at 1005 1st Street, NE, Washington, D.C.

The defendants became involved in the operation of scheduled, regular-route motor carrier passenger services in interstate commerce on or about July 1, 2002. Defendant Monroe Bus Corp. did not obtain registration from the FMCSA pursuant to § 13901 until sometime after the instant action was filed, and defendant Ungar is still not registered with the FMCSA pursuant to § 13901. Defendant Monroe Bus Corp. is incorporated in New York, conducts business in New York from offices located in Monroe County, New York and Brooklyn, New York, and is engaged in the operation of a scheduled, regular-route motor carrier passenger service between New York and Washington, D.C. Defendant Ungar does business as Washington De Luxe Bus Co., is a resident of New York, has a business office located in Brooklyn, New York, and also engages in

---

1. Formerly the Interstate Commerce Commission

the operation of a scheduled, regular-route motor carrier passenger service between New York and Washington, D.C.

## II.  *Parties' Arguments*

Plaintiff Greyhound maintains that on or about July 1, 2002 the defendants began unlawfully holding themselves out as scheduled, regular-route motor carrier passenger services between locations in New York and Washington, D.C. Plaintiff Greyhound maintains that defendant Ungar began conducting unauthorized scheduled, regular-route motor carrier operations between New York and Washington, D.C. under the name "Washington De Luxe Bus Co." In support of this contention, plaintiff Greyhound notes that defendant Ungar advertised and solicited business for Washington De Luxe Bus Co. by printing and distributing flyers, running ads in New York and Washington, D.C. area newspapers, and setting up a web page with schedules and toll-free and direct telephone numbers.  Plaintiff Greyhound also points to a Washington Post article, based on an interview of defendant Ungar, that identifies defendant Ungar as the owner of Washington De Luxe Bus Co., and lists phone numbers ascribed to defendant Ungar and one of her addresses. Plaintiff Greyhound maintains that Washington De Luxe Bus Co. transported passengers between New York and Washington, D.C., and that the passengers usually paid the bus driver at boarding time. Plaintiff Greyhound also contends that the defendants engaged in deception in contravention of § 13901 by displaying signs for "Washington De Luxe Bus Co." before departure, but replacing those signs with ones displaying the name of "Monroe Bus Corp." upon departure.

Defendant Monroe Bus Corp. counters that it merely "leased its buses with drivers to Sharmash [Bus Corp.] through daily charter arrangements for part of Sharmash's New York–Washington transportation," and, therefore, was not required to obtain a § 13901 registration certificate from the FMCSA in order to lawfully conduct its business.  *See* Defendants' Motion. p. 15–16.  Defendant Monroe Bus Corp. further maintains that its lease with Sharmash was "for Sharmash common carrier bus service between Brooklyn, N.Y. and Washington, D.C.," and that a conspicuous service placard stating that the motor carrier service was being operated by Sharmash, not Monroe Bus Corp., was displayed under Sharmash's FMCSA-issued registration certificate.  Defendant Monroe Bus Corp. also notes that it is not the only lessor of Sharmash for this particular type of service.  Moreover, defendant Monroe Bus Corp. maintains that its later application for and receipt of an FMCSA-issued § 13901 registration certificate was for the purpose of mitigating litigation expenses in connection with this action, not because it was required to do so by law.

Defendant Ungar maintains that she has no lease agreement with Sharmash, and does not hold herself out as the conductor of a scheduled, regular-route motor carrier passenger service between locations in New York and Washington, D.C. Rather, defendant Ungar maintains that she is merely a sales agent for Sharmash, and only handles reservations and ticket distribution.  Defendant Ungar also contends that the Washington De Luxe Bus Co. brochures clearly indicate that the bus service is operated by Sharmash under an FMCSA § 13901 registration certificate issued to Sharmash.

Moreover, both defendants, while conceding diversity jurisdiction, dispute that the amount in controversy exceeds $75,000, maintaining that the alleged injury could not meet the $75,000 threshold requirement because defendant Monroe Bus

Corp.'s single-trip daily Sharmash Brooklyn, NY—Washington, D.C. service is non-competitive and minuscule in view of plaintiff Greyhound's combined arrangement with Peter Pan Bus Lines. The defendants also dispute the Court's jurisdiction under 28 U.S.C. §§ 1332(a)(1) or 1331, and maintain that plaintiff Greyhound has failed to state a claim upon which relief can be granted and does not have standing under 49 U.S.C. § 13902(a).

## JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1332. The Court finds that there is diversity of citizenship between plaintiff Greyhound, a Delaware corporation, and the defendants, a New York corporation and a New York resident. Relying on the averment made by plaintiff Greyhound and finding no reason to question said averment, the Court also finds that the amount in controversy is in excess of $75,000, thereby, meeting the statutory requirement.

The Court also has jurisdiction pursuant to 28 U.S.C. § 1331. Section 1331 authorizes jurisdiction in federal courts over actions "arising under the Constitution, laws, or treaties of the United States." Therefore, this Court has jurisdiction over the instant matter brought under 49 U.S.C. §§ 13901, 14704 and 14707.

## APPLICABLE LAW

### I. Procedural Law

Pursuant to Fed.R.Civ.P. 56, summary judgment is appropriate when the motion papers, affidavits, and other submitted evidence demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Wheth-

er a fact is "material" is determined in light of the applicable substantive law invoked by the action. See Anderson v. Liberty Lobby,Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In light of the applicable substantive law, a "genuine issue of material fact" is a fact that is determinative of a claim or defense, and therefore, affects the outcome of the case. See Celotex, 477 U.S. at 322, 106 S.Ct. 2548; Anderson, 477 U.S. at 248, 106 S.Ct. 2505. Because the Court does not sit a fact-finder, it is precluded from weighing evidence or finding facts and must draw all inferences and resolve all doubts in favor of the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Disposition by summary judgment is precluded when determination of a genuine issue of material fact might result in a reasonable jury returning a verdict in favor of the non-moving party. See Anderson, 477 U.S. at 248, 106 S.Ct. 2505; Morgan v. Federal Home Loan Mortg. Corp., 328 F.3d 647, 651 (D.C.Cir.2003).

### II. Substantive Law

The plaintiff's action invokes the Motor Carrier Act, which regulates the operation of certain passenger transportation services by mandating registration, imposing liability for violation of the Act, and creating a private right of enforcement for those injured by violation of the Act.

Section 13901 of the Act requires motor carrier passenger services to register with the FMCSA, and mandates that:

A person may provide transportation or service subject to jurisdiction under subchapter I or III of chapter 135 or be a broker for transportation subject to jurisdiction under subchapter I of that chapter, only if the person is registered under this chapter to provide the transportation or service.

*See* 49 U.S.C. §§ 13901(a). Section 14704 provides rights and remedies for persons injured by violation of the Act, and specifically provides that:

> A carrier or broker providing transportation or service subject to jurisdiction under chapter 135 is liable for damages by a person as a result of an act or omission of that carrier or broke in violation of this part.

*See id.* at § 14704(a)(2). Moreover, § 14707 specifically provides for a private right to enforce the registration requirement imposed by § 13901, and specifically provides that:

> If a person provides transportation by motor vehicle or service in clear violation of section 13901–13904 or 13906, a person injured by the transportation or service may bring a civil action to enforce any such section. In a civil action under this subsection, trial is in the judicial district in which the person who violated that section operates.

*See id.* at § 14707(a).

### ANALYSIS

■ As a threshold matter, the Court finds that pursuant to § 14704(a)(2) plaintiff Greyhound may maintain an action against the defendants for violation of § 13901, and may seek redress by way of the private enforcement right provided by § 14707(a). These finding are in accord with both a plain reading and agency interpretations of the Act. The Federal Highway Administration, then the agency charged with administration of the Act, has stated that "[u]nder 49 U.S.C. 14704, an injured party may seek both damages and injunctive relief against a motor carrier in federal court to redress violations of [the Act] … DOT should not allocate its scarce resources to resolving essentially private disputes, and that the right of private enforcement 'will permit these private disputes to be resolved the way that all other commercial disputes are resolved—by the parties'" *See* 63 Fed.Reg. 31827, 31828 (June 10, 1998) (internal citation omitted). Agency constructions are given deference, *see Cellwave Telephone Services L.P. v. F.C.C.*, 30 F.3d 1533, 1537 (D.C.Cir. 1994), and the Court has not been provided with any valid reason to stray from the relatively clear language of these provisions or the administrative explications regarding them.

Summary judgment is inappropriate in this case because defendants have failed to demonstrate that no genuine issues of material fact exist and that they are entitled to summary judgment as a matter of law. Upon review of all of the submitted papers and the parties' arguments, the Court finds that critical questions remain as to whether the defendants are covered by § 13901 of the Act, and if so, whether they are or were in violation of § 13901 at varying points. Specifically at issue: (1) whether defendant Monroe Bus Corp.'s scheduled bus service between New York and Washington, D.C. was conducted under its charter authority; and (2) whether defendant Ungar, doing business as Washington De Luxe Bus Co., held herself out as a motor carrier of passengers. Material facts critical to the disposition of these issues are in genuine dispute, and the fact that a reasonable jury could resolve these issues and the critical underlying facts in favor of plaintiff Greyhound precludes a grant of summary judgment for the defendants.

■ First, whether defendant Monroe Bus Corp. rendered bus service under its charter authority or rendered scheduled, regular-route common carrier passenger service is a genuine issue of material fact because the type of service rendered by defendant Monroe Bus Corp. bears upon whether it was required to register with

the FMCSA at the commencement of its service. Charter service, for which § 13901 FMCSA registration is not required, is legally distinct from common carrier service, which does require § 13901 registration. Charter service contemplates the transportation of affiliated groups, such as lodges, athletic teams and travel groups. *See Fordham Bus Corp. Common Carrier Application,* 29 M.C.C. 293, 297 (1941), aff'd *Fordham Bus Corp. v. United States,* 41 F.Supp. 712 (S.D.N.Y. 1941). Regular common carrier service contemplates unrestricted access to the general public on a first-come first-serve, even where advanced seat reservations are available, and no requirement of group membership or affiliation. *See Transport of New Jersey v. Greyhound Lines, Inc.,* 463 F.Supp. 1117, 1119 (D.D.C.1979).

Defendant Monroe Bus Corp. holds a FMCSA registration certificate for nationwide *charter* and special service and contends that while it physically operated the buses that provided service between New York and Washington, D.C., the service itself was provided by Sharmash, which holds § 13901 registration for common carrier service in compliance with the Act. Defendant Monroe Bus Corp. maintains that as a mere lessor, it was not required to comply with § 13901. Plaintiff Greyhound, however, maintains that during the period that defendant Monroe Bus Corp. operated without registration it was, indeed, conducting a common carrier passenger service in its own right, contrary to its proffers and in violation of the Act. Drawing all inferences in a light most favorable to plaintiff Greyhound, the Court finds that facts which bear upon resolution of this matter are in dispute, and reasonably resolvable in Plaintiff Greyhound's favor.

First, the Washington De Luxe Bus Co. brochure in which the defendants' services are advertised clearly evinces that they were providing a common carrier service as understood under the Act and described in the case law. The brochure states "Walk–Ins Welcome" and "Reservations Recommended." *See* Washington De Luxe brochure. The brochure also advertises that their service is available "whether you are traveling for business or pleasure," and that a seat may be procured by "pay[ing] cash to the bus driver." *See id.* Viewing the evidence and these statements in the light most favorable to plaintiff Greyhound, the Court finds that a reasonable jury could find that defendant Monroe Bus Corp. was not operating under its national *charter* authority or the § 13901 authority held by Sharmash, a finding that would be favorable to plaintiff Greyhound.

Second, although defendant Monroe Bus Corp. maintains that it is a mere lessor, it admits that there is no written lease agreement, which appears to be industry practice. FMCSA regulation 49 C.F.R. § 390.21(e), in fact, requires written lease agreements and that a copy of the written agreement travel with the leased vehicle unless there is a placard showing the name of the lessee on the vehicle. FMCSA regulation 49 C.F.R. § 391.65 requires that motor carriers using the drivers of another motor carrier maintain driver qualification records for three years. The existence and maintenance of these records in question as none have been produced. A reasonable inference to be drawn, and one that a reasonable jury could make, from the lack of a written lease agreement or related records is that no lease agreement existed.

Third, FMCSA regulation 49 C.F.R. § 395.8(k) requires that *the motor carrier for which the vehicles are being operated* retain driver duty status logs for at least six months. Here, although defendant Monroe Bus Corp. maintains that it operated motor vehicles for Sharmash and un-

der Sharmash's § 13901 authority, both Sharmash's and Monroe Bus Corp.'s interrogatory responses reveal that Monroe Bus Corp., not Sharmash, maintained the driver duty status logs. This would indicate, and a reasonable jury could find, that defendant Monroe Bus Corp. was not simply physically operating vehicles for Sharmash, but rather operating the buses for their own unlawful business purposes.

Fourth, FMCSA regulation 49 C.F.R. § 390.21(a) requires that the name and MC or USDOT number of the motor carrier passenger service appear on both sides of the vehicle. Here, despite its representations that service is conspicuously placarded "as being operated by Sharmash under its FMCSA registration certificates," see Answer, para. 2, in an interrogatory response defendant Monroe Bus Corp. admits that "Monroe's name and MC/USDOT numbers appear on both sides of its buses at all times." See Interrogatory No. 2. This fact is corroborated by averments made in the affidavits of Raymond A. Robinson and Myron H. Watkins, who, upon investigation, observed that defendant Monroe Bus Corp.'s name was the only one displayed on the sides of the buses. Given the Court's inferential duty and the defendants' burden, this dispute alone precludes the grant of summary judgment in this case.

■ Next, material facts determinative of whether defendant Ungar holds herself out as a motor carrier of passengers are also in dispute. Defendant Ungar maintains that she is a mere agent for Sharmash, and notes, in support, that the Washington De Luxe Bus Co. brochures that she issues clearly indicate that the bus service is operated by Sharmash under Sharmash's § 13901 registration certificate. Despite defendant Ungar's representations of agency, whether she provided illegal service under the name Washington De Luxe Bus Co., depends upon whether she held herself out to the general public as the owner of Washington De Luxe Bus Co. and as motor carrier of passengers. See Craig Contractor Carrier Application, 31 M.C.C. 705, 708–709 (1941); J. Norman Geipe, Inc., Common Carrier Application, 1 M.C.C. 693, 697 (1937). Plaintiff Greyhound points to several pieces of evidence that suggest that defendant Ungar does business as Washington De Luxe Bus Co. and holds herself out as a motor carrier of passengers.

As previously mentioned defendant Ungar printed and distributed flyers, ran newspaper ads, gave interviews, and ran a website under the name Washington De Luxe Bus Co. Defendant Ungar also concedes that the name "Sharmash Bus Corp." did not appear in the advertisements, that the telephone numbers listed for Washington De Luxe Bus Co. either belonged to her or were listed to her address, and that she paid the telephone bills herself. Again, drawing all inferences in the light most favorable to the non-moving party, plaintiff Greyhound, the Court finds that a reasonable jury could interpret this as evidence that defendant Ungar does hold herself out as a motor carrier of passengers in violation of § 13901.

## CONCLUSION

For the aforementioned reasons, the Court finds that the defendants are not entitled to summary judgment, and their motion is, therefore, denied.

SO ORDERED.